CAUSE NO. CV08-0208

| | | |
|---|---|---|
| FRED WESTFALL, TIMOTHY WESTFALL, PATRICIA WESTFALL GONZALES, AND WESTFALL CONSTRUCTORS, LTD., | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| v. | § § | |
| NORMAN H. BEVAN, JONATHAN COCKS, RAYMOND WICKER, SCOTT RIDGE, AMERICAN GENERAL LIFE INSURANCE COMPANIES , THE MILLENNIUM MULTIPLE EMPLOYER WELFARE BENEFIT PLAN, MILLENIUM MARKETING GROUP, LLC, AND INNOVUS FINANCIAL SOLUTIONS, INC., | § § § § § § § § § § § | DALLAS COUNTY, TEXAS |
| Defendants. | § | 95th JUDICIAL DISTRICT |

## DEFENDANT RAYMOND WICKER'S ORIGINAL ANSWER, COUNTERCLAIM AND THIRD PARTY PETITION

COMES NOW Defendant Raymond Wicker ("Wicker" or "Defendant") and files this, his Original Answer, Counterclaim and Third Party Petition, and would respectfully show the Court as follows:

### GENERAL DENIAL

1.      Defendant generally denies, pursuant to Texas Rule of Civil Procedure 92, each and every, all and singular, the allegations contained in Plaintiffs' Original Petition and demands strict proof thereof by a preponderance of the evidence.

---

**DEFENDANT RAYMOND WICKER'S ORIGINAL ANSWER, COUNTERCLAIM AND THIRD PARTY PETITION – Page 1**

2.      Answering further, if such be necessary, Defendant states affirmatively that Plaintiffs' claims are subject to complete preemption pursuant to ERISA §502(a), 29 U.S.C. §1102(a).

3.      Answering further, if such be necessary, Defendant states affirmatively that Plaintiffs' claims, in whole or in part, are subject to conflict preemption pursuant to ERISA §514(a), 29 U.S.C. §1144(a).

4.      Answering further, if such be necessary, Defendant states affirmatively that Plaintiffs' loss, in whole or in part, was caused by their own acts and omissions.

5.      Answering further, if such be necessary, Defendant states affirmatively that Plaintiffs' loss, in whole or in part, was caused by third parties' acts and omissions.

6.      Answering further, if such be necessary, Defendant states affirmatively that Plaintiffs' claims under the DTPA are barred, in whole or in part, as claims based upon the rendering of professional services. TEX. BUS. & COMM. CODE §17.49(c).

7.      Answering further, if such be necessary, Defendant states affirmatively that Plaintiffs' claims are barred, in whole or in part, by the applicable statute(s) of limitation.

8.      Answering further, if such be necessary, Defendant states affirmatively that Plaintiffs' claims for equitable relief are barred, in whole or in part, by their unclean hands.

9.      Answering further, if such be necessary, Defendant states affirmatively that Plaintiffs' claims, in whole or in part, are barred by ratification and waiver.

## PRAYER

WHERFORE, PREMISES CONSIDERED, Defendant Raymond Wicker prays that, upon final hearing, Plaintiffs take nothing by their suit, and that Defendant recover his costs,

---

**DEFENDANT RAYMOND WICKER'S ORIGINAL ANSWER, COUNTERCLAIM AND THIRD PARTY PETITION – Page 2**

together with such further and other relief, in law and equity, to which this Court finds him justly entitled.

## ORIGINAL COUNTERCLAIM AND THIRD PARTY PETITION

Subject to and without waiving his Original Answer, Defendant Raymond Wicker ("Wicker"), as counter- and third party plaintiff, files this, his Original Counterclaim and Third Party Petition and would respectfully show the Court as follows:

### PARTIES, VENUE AND JURISDICTION

1.       Defendant Wicker is an individual residing in Texas.

2.       Plaintiff Patricia Westfall Gonzales ("Gonzales") is an individual residing in Texas.  She has appeared in the case, and may be served by serving her attorney of record pursuant to the Texas Rules of Civil Procedure.

3.       Third Party Defendant G.E. O'Neill ("O'Neill") is an individual residing in Texas.  He may be served at his residence of 1670 Sheerbrooke, Houston, Texas 77056 or business address of 3835 Dacoma, Houston, Texas 77092.

4.       Venue is proper pursuant to Texas Civil Practices & Remedies Code §15.002 in Dallas County as it is the county in which all or a substantial part of the events or omissions giving rise to this suit occurred.

5.       Plaintiff Gonzales and Third Party Defendant O'Neill are individuals subject to personal jurisdiction of the Court.  The amount in controversy and the relief requested are within the subject matter jurisdiction of this Court.

### BACKGROUND

6.       Wicker is a licensed insurance agent in the State of Texas.  In 2001 O'Neill, the Executive Vice President for Westfall Constructors, Ltd. ("Westfall") and certified public

accountant was referred to Wicker to assist O'Neill in setting up a welfare benefit plan under the Internal Revenue Code (the "Code") for Westfall. Specifically he requested a welfare benefit plan be created pursuant to 26 U.S.C. §419A(f)(6). O'Neill had researched the issues surrounding such plans and, in his capacity as a certified public accountant and as an accountant for Westfall, desired to use a 419A(f)(6) plan to obtain substantial tax savings for Westfall and its owners. He was cognizant of the legal opinions issued concerning the legality of the Advantage DBO Plan (the "Plan") designed by the BISYS Group, Inc. ("BISYS"), through which Wicker sold the plan.

7.    In December 2001, Westfall adopted the Advantage DBO Plan, effective January 1, 2001. As the principals of Westfall and O'Neill were aware, the Advantage DBO Plan was funded solely with life insurance polices on the lives of the principals of Westfall. In fact, disclosures were signed on behalf of Westfall acknowledging life insurance was to be used as a funding vehicle and also that it was Westfall's responsibility to seek the advice of its own tax professional regarding the application of the tax laws to the transaction. The disclosures included an acknowledgement that legislation was pending in Congress that would restrict or eliminate the benefits under the plan with respect to the tax deductions O'Neill sought. Acknowledging the risk associated with taking such tax deductions, Westfall participated in a program presented by BISYS offering fiduciary audit insurance. offered

8.    O'Neill, Westfall's accountant, was not the only Westfall representative intimately involved in the transaction. Gonzales is also a licensed insurance agent in the State of Texas. She was involved in the procurement of the life insurance policies used to fund the Advantage DBO Plan. While Wicker is listed as the servicing producer on the life insurance policies, Gonzales is listed as a writing producer. The commissions for the policies, described as

"grossly excessive" by Plaintiffs' Original Petition, were split four ways, with Gonzales receiving the largest percentage.

9.      In 2003, the Internal Revenue Service ("IRS") issued regulations relating to Section 419(a)(f)(6) of the Code effectively precluding use of Section 419A(f)(6) in a manner that would allow any significant tax deductions funding a plan with cash value life insurance. As a result, BISYS terminated the Advantage DBO Plan and sought to return the life insurance policies to its participants.

10.      In 2003, upon information and belief, several individuals, including Defendant Norm Bevins, John Cocks and Scott Ridge, began marketing a new welfare benefit plan created pursuant to Section 419(e) of the Code and named the "Millennium Plan." Also upon information and belief, marketers of the Millennium Plan began actively soliciting former members of the Advantage DBO Plan.

11.      Apparently these marketers contacted Westfall. O'Neill contacted Wicker seeking to convert Westfall's Advantage DBO Plan to the Millennium Plan for tax reasons. At O'Neill's insistence, Wicker provided O'Neill with documents Wicker had compiled relating to the Advantage DBO Plan and assisted him in completing the paperwork to transfer Westfall's principal's insurance policies to the Millennium Plan. Wicker received no compensation, commissions or otherwise, as a result of the transfer. He simply did what he was instructed to do by O'Neill.

12.      In 2007, the IRS issued two notices and one revenue ruling warning taxpayers that it intended to deny all, or virtually all, claimed tax benefits for 419(e) plans funded with cash value life insurance.

---

**DEFENDANT RAYMOND WICKER'S ORIGINAL ANSWER, COUNTERCLAIM AND THIRD PARTY PETITION – Page 5**

## COUNT ONE – CONTRIBUTION AND INDEMNITY

13.     Plaintiffs' Original Petition asserts various causes of action, including fraud, negligent misrepresentation, fraudulent concealment, civil conspiracy, and violations of Texas Insurance Code Art. 541.151. The Petition also seeks the imposition of a constructive trust to hold funds received by one or more of the named defendants from Plaintiffs.

14.     Wicker, as counter and third-party plaintiff, is entitled to contribution and indemnity from counter defendant Gonzales and third-party defendant O'Neill toward any liability that may be found to exist from Wicker to Plaintiffs as a result of the occurrences made the basis of the Plaintiffs' suit. In this connection, Wicker will show that both Gonzales and O'Neill participated in the development of the Advantage DBO Plan.  Specifically, Gonzales received a sizable commission (larger than that of Wicker) for her efforts procuring the life insurance to fund the plan.  As Westfall's controller, O'Neill recommended the 419A(f)(6) to Westfall in an effort to reduce tax liability. Furthermore, he approached Wicker requesting assistance in transferring the life insurance polices to the Millennium Plan. Accordingly, pursuant to Chapter 33 of the Civil Practice and Remedies Code, Wicker is entitled to contribution for the percentage of responsibility assigned to Gonzales and O'Neill by the trier of fact.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Raymond Wicker, as counter-plaintiff and third-party plaintiff, prays that third-party defendant Jerry O'Neill be cited to appear and answer, and upon final hearing, that he have the following:

1.      Judgment against Patricia Westfall Gonzales and Jerry O'Neill for contribution as provided by law.

---

2.      Costs of suit.

3.      Such further and other relief, in law and equity, to which this Court finds him

justly entitled.

Respectfully submitted,

KESSLER & COLLINS
A Professional Corporation

By: _____

GARY S. KESSLER
State Bar No. 11358200
BRYON L. ROMINE
State Bar No. 24049804

2100 Ross Ave., Suite 750
Dallas, Texas  75201
214.379.0722 Telephone
214.373.4714 Facsimile

*ATTORNEYS FOR RAYMOND WICKER*

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing has been served by Certified Mail, Return Receipt Requested on Anthony L. Vitullo, Fee, Smith, Sharp and Vitullo, LLP, Three Galleria Tower, 13155 Noel Road, Suite 1000, Dallas, Texas 75240 on this 9th day of June 2008.

_____
BRYON L. ROMINE

**DEFENDANT RAYMOND WICKER'S ORIGINAL ANSWER, COUNTERCLAIM AND THIRD PARTY PETITION – Page 7**

## ADOPTION AGREEMENT
### UNDER THE MILLENNIUM
### MULTIPLE EMPLOYER WELFARE BENEFIT PLAN[1]

This ADOPTION AGREEMENT ("Agreement") is entered into by and between WESTFALL CONSTRUCTORS LTD ("Employer") and the Millennium Multiple Employer Welfare Benefit Plan (the "Plan"), effective this _3_ day of the month of _MAY_, 200 _4_.

The Employer desires to adopt the Plan and to be bound by the Plan's terms as set forth in the Plan, the Trust Agreement under the Plan, and this Adoption Agreement. The terms and conditions of the Employer's adoption and participation in the Plan are as follows:

**1. The Employer is:**

Name: _WESTFALL CONSTRUCTORS LTD_

a: corporation, limited-liability-company, limited liability partnership, professional corporation, partnership (circle one), under the laws of the State of _TX_.

Address: _3835 DACOMA   HOUSTON, TEXAS 77092_

**2. The Primary Contact for the Employer is:**

Name: _G. E. O'NEILL_

Phone Number: _713 681 6160_   Fax Number: _713 681 6195_

e-Mail Address: _JONEILL@WESTFALLGROUP.COM_

**3. The Tax or Fiscal Year of the Employer is:** _DECEMBER 31/04_ and Employer is a (circle one) **accrual** cash basis tax payer.

**4. The Employer acknowledges and agrees that:**

> A. The Employer has been delivered a copy of the Plan and is, upon execution of this Adoption Agreement, bound by the Plan's terms.

> B. The Employer shall become a Covered Employer for purposes of the Plan upon the last to occur of the following events:

>> i. the Third Party Administrator receives this Adoption Agreement, fully executed by a person authorized to sign such documents;

---

[1] Copyright 2002, Millennium Marketing Group, LLC, Patent Pending 2002

Final Adoption Agreement-01
March 2003

ii.    a Resolution/Consent of the Board of Directors or other governing body of the Employer authorizes the execution and delivery of the Adoption Agreement as set forth above, or ratifies such execution and delivery, and a copy of such resolution or consent is received by the Third Party Administrator;

iii.    the initial Contributions or other initial payments identified in this Adoption Agreement at Exhibit "D" are placed into the Escrow Account for forwarding to the Trustee when Insurance is issued;

iv.    Insurance identified by Exhibit "A" to this Adoption Agreement on the lives of those Eligible Employees the Employer intends to be Participants in the Plan are issued to the Trust and received by the Trustee.

In the event an Employer's chosen Participant/Employee(s) is rejected by an Underwriter, the Contribution attributable to that (those) Participant/Employee(s) will be refunded from the Escrow Account. Administration costs, however, are non-refundable.

C.    Once all the events identified in subsection "B," above have occurred, the Employer will be deemed a "Covered Employer" under the Plan and will remain such until one or more of the following events **first** occurs:

i.    the Covered Employer ceases to make Contributions as identified in this Adoption Agreement or is otherwise deemed by the Third Party Administrator to be in default of the Adoption Agreement;

ii.    thirty (30) days have expired since the Third Party Administrator sent written notice to the Covered Employer in a manner specified by subsection "D," below, that the Covered Employer's participation is to be terminated for any reason for which the Third Party Administrator is authorized to provide such notice of termination to a Covered Employer under this Plan in non-default situations;

iii.    the Plan is terminated;

iv.    thirty (30) days have expired since the Covered Employer provided the Third Party Administrator with written notice in a manner specified by subsection "D," below, that the Covered Employer wishes to withdraw from the Plan, and the Third Party Administrator has received such notice;

v.    the last of all Insurance issued on the lives of Eligible Employee/Participants of the Covered Employer lapse, are cancelled or are terminated by the insurance company issuing such policies; or

vi.    the last of any fixed Death Benefits or Life Benefits due and owing under
the terms of this Plan and the Adoption Agreement are paid to Eligible
Employee/Participants of the Covered Employer or their designated Beneficiaries.

D.    Written notices by and between any Covered Employer and the Third Party
Administrator shall be addressed as identified in the Adoption Agreement and shall be
sent by certified mail, return receipt requested, or by next day delivery, return receipt
requested by any commercial carrier.

E.    The Employer further acknowledges:

i.    Each Eligible Employee/Participant of the Employer shall be assigned to a
Rating Group by the Plan Committee, based upon risks commonly recognized and
actuarially taken into account by providers of death benefits or cash surrender
value benefits in the insurance industry;

ii.    The Employer's fixed Contribution amount will be based upon an
aggregate of all fixed Contribution amounts associated with all the Rating Groups
to which the Employer's Eligible Employee/Participants are assigned.    The
Employer's initial Contribution shall be deposited into the Sponsor's Escrow
Account, and held there **without bearing interest**, until such time as Insurance
identified in this Adoption Agreement has been issued and the initial Contribution
is deposited into Trust under the Plan;

iii.    The Benefits received by each Participant (or a designated Beneficiary of
the Participant) of the Employer shall be a guaranteed fixed amount determined
by the Rating Group to which each Participant of all Covered Employers in the
Plan is assigned and the length of time of participation;

iv.    As to Plan Assets, the risk of gains or losses shall be born by all
Participants in the Plan within an assigned Rating Group, regardless of which
Covered Employer employs them;

v.    In no event, shall all or part of any Plan Assets or other sums held in Trust
be paid to, accounted to or credited or deducted from an account of any particular
Covered Employer participating in the Plan or any Eligible Employee/Participants
of such Covered Employer;

vi.    If the Employer withdraws from the Plan, or the Plan is terminated, the
Plan will pay only the fixed amount of Life Benefit attributable to the Rating
Group assignment of each Participant of the Covered Employer as shown by
Exhibit "B" to the Plan. Any excess amounts shall be forfeited to the Plan and
shall be used to defray the normal costs of Plan administration for the benefit of

all Participants and Beneficiaries of all Covered Employers participating in the Plan;

vii.    The Plan is not required by pay any Benefits to any Participant under the Plan where the Participant's death results from suicide committed within two years of issuance of Insurance on the life of the Participant or for any other reason for which any Insurance in the Participant's assigned Rating Group is excused from paying death benefits.

viii.    A description of the Insurance and Underwriters selected by the Employer to insure the lives of the Covered Employer's Participants is attached hereto as Exhibit "A." The Employer has had an opportunity to review and consider a number of different Insurance products, including fixed, indexed, declared interest and variable interest life products, and has considered the risks and benefits associated with each, prior to selecting the Insurance identified in Exhibit "A";

ix.    The Employer is obligated to provide to the Third Party Administrator current contact information (i.e. address and telephone number) of all Eligible Employees/Participants of the Covered Employer within thirty (30) days of the commencement of each tax year of the Covered Employer; and

F.    **Each Employee of the Employer must satisfy the following requirements in order to become a Participant of the Plan, subject to the Plan's terms and conditions:**

i.    **Service Requirement:**

Employees of the Employer must work a total of ___/___ years for the Employer prior to the commencement of the Plan Year in order to be eligible to participate in the Plan. An Employee shall be deemed to have worked for one (1) year in each Plan Year (as shown above) that the Employee works 1000 hours or more.

ii    **Minimum Age:**

Employees of the Employer must be at least _18_ (note: must be in excess of eighteen (18)) years of age at the time of entry into the Plan.

iii.    **Class Participation and Design:**
**The Employer chooses the following classes of Employees to participate in the Plan:**

[Check the box indicating chosen classes]

☐   **Class "1,"** defined or identified as follows:_____

_PRESIDENT_ _____

_____

_____

☐   **Class "2,"** defined or identified as follows:_____

_CONTROLLER_ _____

_____

_____

☐   **Class "3,"** defined or identified as follows:_____

_VICE PRESIDENT_ _____

_____

_____

☐   **Class "4,"** defined or identified as follows:_____

_____

_____

iv.   **Excluded Employee(s):**

Notwithstanding the above, Employees who are covered by a collective bargaining agreement shall not be eligible to participate in the Plan. **In addition, the following classes of Employees SHALL NOT be eligible to participate in the Plan:**

**CIRCLE YES OR NO**

Leased or temporary employees?                    (Yes)              No

Employees who work less than 40 hours per week?   (Yes)              No

Others as described herein: _____

_____

_____

iv.     **Disclosure of Family Relationships:**

The Employer discloses that the following family members (i.e., spouses, children, parents, brothers, sisters) of Employees eligible for participation in the Plan are currently Plan Participants:

*PATRICIA WESTFALL & TIMOTHY WESTFALL*
*DAUGHTER                                SON*

G.      **Once eligibility requirements are met, an Eligible Employee will become a Plan Participant upon the last to occur of the following events:**

i.      The Qualifying Employer of the Eligible Employee has become a Covered Employer;

ii.     The Underwriter issues a policy of Insurance on the life of the Eligible Employee;

iii.    The Eligible Employee is assigned a Rating Group by the Committee and notice of such assignment is sent to the Employer by the Third Party Administrator;

iv.     The Employer pays its Contribution to the Plan with respect to all Eligible Employee/Participants of the Employer; and

v.      All Insurance on the Employer's Eligible Employee/Participants and the fixed Contribution of the Covered Employer are received by the Trustee.

**Participants will remain in that status, and will continue participation under the**

Plan until their respective participation ceases as set forth in the Plan. Eligible Employees of this Employer are identified in Exhibit "B," attached, hereto. Beneficiaries of the Eligible Employees, once they are Participants, shall be designated as shown in Exhibit "C."

5.    **Contribution/Benefit Design:**

For purposes of the Plan, the following WILL OR WILL NOT (circle one) be considered as "Compensation," notwithstanding the Plan's terms:

- i.    W-2 Income
- ii.   Guaranteed cash payments from the Employer
- iii.  Bonuses
- iv.   Overtime
- v.    Commissions
- vi.   Employer contributions to a tax-qualified retirement plan
- vii.  Other:_____

Subject to the provisions of the Plan, the Employer chooses the following Contribution and Benefit Arrangement (circle the chosen option(s) and indicate for which Class of Employees the Contribution choice is made):

A.    A fixed, annual Contribution in the amount of:

   $_____, for Class 1,

   $_____, for Class 2,

   $_____, for Class 3, and

   $_____, for Class 4.

B.    The amount of Contribution that yields a fixed Death Benefit in the amount of:

   $ *2,075,000*, for Class 1,

   $ *875,000*, for Class 2,

   $ *1,325,600*, for Class 3, and

   $_____, for Class 4.

Final Adoption Agreement-01
March 2003
© 2003 Millennium Marketing Group, LLC
Patent Pending 2003

7

C. The amount of fixed Death Benefit and/or Life Benefit that, given the Rating Group of the Employer's Eligible Employee/Participants, can be purchased with the aggregate fixed Contribution of $_____, payable as follows:

$_____, for Class 1,

$_____, for Class 2,

$_____, for Class 3, and

$_____, for Class 4.

D. The amount of Contribution equal to $_____, per Eligible Employee/Participant, regardless of the amount of fixed Death Benefit or Life Benefit that, given the Rating Group assignment, the Plan will be obligated to pay.

E. The amount of Contribution that equals the aggregate of _____% of Compensation of Eligible Employee/Participants, as defined by the Plan and as set forth in this Adoption Agreement, below, regardless of the amount of fixed Death Benefit or Life Benefit that, given the Rating Group assignment, the Plan will be obligated to pay.

**Given the Contribution/Benefit design chosen above, the Employer acknowledges and agrees that its Contribution amount, and the administrative fee(s) associated with its participation in the Plan as a Covered Employer is shown by Exhibit "D," attached hereto and made a part hereof.**

Initial Contributions shall be made payable to the Millennium Marketing Group, LLC, Escrow Account, where they will be held without interest until Insurance is issued by the Underwriter. Subsequent Contributions shall be made payable to the Millennium Multiple Employer Welfare Benefit Plan. Payments for administrative expenses shall be made payable to Millennium Marketing Group, LLC Business Account.

F. In addition to the Death Benefit, the following Life Benefits will be payable to Participants when the Participants demonstrate qualification for such Life Benefits:

[Check Each that Apply]

✓ Fixed Lump Sum Life Benefit upon Participant's Separation from Employment.

✓ Partial or Lump Sum Life Benefit upon Participant's Total Disability.

✓ Partial or Lump Sum for reimbursement of tax-qualified medical expenses or other hardship as provided by the Plan and as demonstrated to the Plan Committee in their absolute discretion.

Final Adoption Agreement-01
March 2003
© 2003 Millennium Marketing Group, LLC
Patent Pending 2003

8

Death Benefits will be decreased by amount of Life Benefits paid from the Plan.

**6.    Amendment:**

The Employer may amend this Adoption Agreement only in writing and with the written permission of the Plan Committee. Employer hereby grants and delegates to the Plan Sponsor the power to amend and modify the Plan. The Employer hereby ratifies, approves and confirms all prior Amendments made to the Plan or Trust. The Employer agrees to execute additional Adoption Agreements, at the request of the Administrator or the Trustee, in order to ratify and confirm the matters set forth herein. By adopting this Adoption Agreement, Employer acknowledges that it has no power to amend or terminate the Plan.

**7.    Indemnification:**

By executing the Adoption Agreement, each Employer hereby agrees to defend, indemnify and hold the Committee, the Third Party Administrator, the Underwriter, and the Trustee, and each of them harmless from and against any liability, claim, action, suit, loss or cost or expense, including without limitation, attorney's fees and cost of court, arising from or in connection with any of the following matters: (a) following or carrying out any directions given pursuant to the terms of the Plan or Trust; (b) carrying out or executing any of its responsibilities in connection with the Plan or Trust, including any responsibilities performed pursuant to the direction of any party; (c) the payment of any tax due with respect to or levied upon the Trust by any federal, local, or state taxing authority, to the extent assets held by the Trust are insufficient to pay such tax; or (d) any action or omission of the Committee, the Third Party Administrator, the Underwriter or the Trustee performed, in good faith, in connection with maintenance or administration of the Plan or Trust, provided that each is authorized or permitted to perform or omit such act under the Plan or Trust. The foregoing indemnification shall extend to any Employee, officer, director or agent of the Committee, the Third Party Administrator, the Underwriter or Trustee. Notwithstanding the foregoing, in no event shall the indemnification provided by this paragraph require that the Committee, the Trustee, the Underwriter, or the Third Party Administrator be indemnified for any action taken or omitted which constitutes gross negligence, breach of fiduciary duty, or willful misconduct.

**8.    No Tax Advice:**

The Employer represents and warrants to the Committee, the Third Party Administrator, the Underwriter, and the Trustee that it has determined to participate in the Plan only after seeking the advice of independent counsel concerning the tax consequences of the Employer's participation in the Plan, and that the Employer has not relied upon either the Committee, the

Final Adoption Agreement-01                                                                                              9
March 2003
© 2003 Millennium Marketing Group, LLC
Patent Pending 2003

Trustee, the Underwriter, the Third Party Administrator, or their employees or agents with respect to any tax advice concerning the Plan.

**9.    Other Acknowledgments:**

In addition to other representations and warranties, the Employer makes the following acknowledgments and representations:

a.    The Employer has not relied upon any legal or tax advice of the Sponsor, the Committee, the Third Party Administrator, the Underwriter or the Trustee, or any agent of these, in executing this Agreement.

b.    Tax consequences arising from the Employer's adoption of the Plan are the responsibility of the Employer.

c.    Contributions made by the Employer will be used, in part, to purchase contracts of Insurance on the lives of the Employee/Participants of the Employer.  Initial Contributions will be placed in the Sponsor's Escrow Account and held there, without accruing interest or earnings, until Insurance contemplated by this Agreement is issued by the Underwriter.

d.    The Employer has received, and has read and understood, the Plan, the Trust and this Agreement.

e.    The Employer will inform the Third Party Administrator as soon as possible, but in any event in no less than thirty (30) days of any changes to the contact information provided to the Plan on all Employee/Participants of the Employer.

d.    The Employer will distribute all notices, summary plan descriptions, and other information from the Plan to the Employee/Participants of the Employer when directed to do so by the Third Party Administrator.

**10.    Limitations on Adoption:**

The Employer represents that it is not a sole proprietorship and acknowledges that a sole proprietorship is not eligible to adopt this Plan.

**12.    Benefit Integration:**

The Benefits provided under the Plan are not integrated with or reduced by the benefits under other private or public plans.

Final Adoption Agreement-01                                                                    10
March 2003
© 2003 Millennium Marketing Group, LLC
Patent Pending 2003

**13.     Terms and Conditions of the Plan Control:**

The Employer acknowledges and agrees that it has read the Plan, understands its terms and conditions, and is lawfully bound to such terms and conditions.  Where the provisions of this Adoption Agreement, or any Summary Plan Description of the Plan conflict with the Plan terms, the Plan terms control.  Capitalized terms contained in this Adoption Agreement have the same meaning as capitalized and defined terms in the Plan.  The Plan Committee has the sole and absolute discretion to interpret the terms of this Agreement and the Plan in the event of a dispute.

**14.  Payment of Fees and Contributions:**

Employer acknowledges and agrees that initial contributions and all administrative fees due under the Plan and/or this Adoption Agreement shall be paid, as invoiced, as follows:

| | |
|---|---|
| Millennium Marketing Group, LLC | Millennium Marketing Group, LLC |
| Att: Norm Bevan | Att: Scott Ridge |
| 2777 Allen Parkway, Suite 1122 | P.O. Box 247 |
| Houston, Texas 77019 | Swarthmore, Pennsylvania 19081-9978 |

Contributions should be paid to:

Millennium Multiple Employer
 Welfare Benefit Plan
Republic Bank of Norman, Trustee
Att: Rick Boyle
P.O. Box 5369
Norman, Oklahoma 73030

**15.    Notices To and From the Third Party Administrator:**

Written notices required by the Plan shall be delivered to the Third Party Administrator at:

BKD, LLP
Att: William E MaGee, Partner
400 W. Capitol Avenue, Suite 2500
P.O. Box 3667
Little Rock, Arkansas 72203-3667

Written notices required by the Plan shall be delivered to the Employer at:

WESTALL CONSTRUCTORS, LTD

1839 DACOMA

HOUSTON, TEXAS 77092

**16.    Election for Individual Legal Opinion:**

The Employer **DOES** or **DOES NOT** (circle one) elect to have an individualized legal
opinion pertaining to the federal tax issues that may arise from the Employer's participation in
the Plan issued to the Employer. If the Employer elects to have a individualized legal opinion
issued, the Employer agrees to pay the fees and costs associated with counsel's professional
services for such opinion. The Employer acknowledges that the fees and costs for an
individualized legal opinion have been disclosed to the Employer.

Final Adoption Agreement-01                                                                                              12
March 2003
© 2003 Millennium Marketing Group, LLC
Patent Pending 2003

**IN WITNESS WHEREOF,** The undersigned Employer representative is authorized under the controlling documents of the corporate or other entity to enter into this Adoption Agreement and has executed this Adoption Agreement on the date first stated above.

"Employer"    WESTFALL CONSTRUCTORS LTD
WESTFALL GROUP LLC GENERAL PARTNER

_____
Signature of Authorized Party

Its: _____

**Accepted By:**

Millennium Marketing Group, LLC

_____
Sponsor

BKD, LLP
_____
Third Party Administrator

_____ Republic Bank & Trust, Trustee
Trustee

## EXHIBIT "A"

### INSURANCE PRODUCTS CHOSEN BY EMPLOYER

AMERICAN GENERAL LIFE — UL

FRED WESTFALL — A 70007763L

PATRICIA WESTFALL — A 70007671L

TIMOTHY WESTFALL — A 70007772L

Final Adoption Agreement-01
March 2003

EXHIBIT "B"
LIST OF EMPLOYEES ELIGIBLE TO PARTICIPATE IN THE  PLAN

FRED WESTFALL   —   285 - 38 - 5067      10/19/1945

PATRICEA WESTFALL  —   462 - 13 - 1574      3/2/1972

TIMOTHY WESTFALL  —   456 - 02 - 3926      6/23/1967

Final Adoption Agreement-01
March 2003

EXHIBIT "C"
BENEFICIARY DESIGNATION
UNDER THE
MILLENNIUM MULTIPLE EMPLOYER WELFARE BENEFIT PLAN[1] (the "Plan")

Participant's Name: _Patricia Lynn Westfall_

Social Security Number: _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_

I _Patricia Lynn Westfall_, desire to become a Participant in the Plan. I designate the trust or person(s) identified below as the Beneficiary (ies) of any Death Benefit(s) under the Plan. This Beneficiary Designation hereby revokes and supersedes all other designations that may have been made by me under the Plan prior to this designation. Unless irrevocable as indicated, below, I acknowledge and agree that this Beneficiary Designation is effective and revocable only by me, in writing, or as superceded by a subsequent Beneficiary Designation executed by me.

Check One Option:

☐ I designate a trust to be my Beneficiary

☒ I designate a person or persons to be my Beneficiary (ies)

For Trust:

Name of Trust_____

Name and Address of Trustee:_____

_____

State of Origin of Trust:_____ Date Trust Originated:_____

For Individual Beneficiary (ies):

| Name and Address of Beneficiary (ies) | Relationship | Date of Birth |
|---|---|---|
| 1 _Fred Westfall_ <br> _17622 Northgate Forest Dr._ | _Father_ | _10/19/45_ |
| 2 _Houston TX 77068_ | | |
| 3 | | |
| 4 | | |

---
[1] Copyright 2002, Millennium Marketing Group, LLC, Patent Pending 2002.

Final Adoption Agreement-01
March 2003

and others as shown by the attachment(s), if any.

## NOTICE

Unless otherwise indicated, if there is more than one Beneficiary, Death Benefit(s) will be divided equally among the Beneficiaries. If any Beneficiary predeceases the Participant, the amount that would have been paid to such Beneficiary shall instead be paid to any surviving Beneficiaries in equal shares. If no Beneficiaries survive me, then benefit shall be paid to the Participant's estate or as directed by the Plan's terms.

This designation of Beneficiary or Beneficiaries IS  or  IS NOT (circle one) irrevocable by me.

_____          _____
Participant's Signature                                  Date

_____
Witness

Final Adoption Agreement-01
March 2003
© 2003 Millennium Marketing Group, LLC
Patent Pending 2003

2

EXHIBIT "C"
BENEFICIARY DESIGNATION
UNDER THE
MILLENNIUM MULTIPLE EMPLOYER WELFARE BENEFIT PLAN[1] (the "Plan")

Participant's Name: _Timothy Leigh Westfall_

Social Security Number: _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_

I _Timothy Leigh Westfall_, desire to become a Participant in the Plan. I designate the trust or person(s) identified below as the Beneficiary (ies) of any Death Benefit(s) under the Plan. This Beneficiary Designation hereby revokes and supersedes all other designations that may have been made by me under the Plan prior to this designation.   Unless irrevocable as indicated, below, I acknowledge and agree that this Beneficiary Designation is effective and revocable only by me, in writing, or as superceded by a subsequent Beneficiary Designation executed by me.

Check One Option:

☐  I designate a trust to be my Beneficiary

☒  I designate a person or persons to be my Beneficiary (ies)

For Trust:

Name of Trust_____

Name and Address of Trustee:_____

_____

State of Origin of Trust:_____    Date Trust Originated:_____

For Individual Beneficiary (ies):

| Name and Address of Beneficiary (ies) | Relationship | Date of Birth |
|---|---|---|
| 1  Carrieann Westfall | Spouse | 7/1/68 |
| 14910 Stonemeade Place | | |
| 2  Cypress, TX  77429 | | |
| 3 | | |
| 4 | | |

---

[1] Copyright 2002, Millennium Marketing Group, LLC, Patent Pending 2002.

Final Adoption Agreement-01
March 2003

and others as shown by the attachment(s), if any.

## NOTICE

Unless otherwise indicated, if there is more than one Beneficiary, Death Benefit(s) will be divided equally among the Beneficiaries. If any Beneficiary predeceases the Participant, the amount that would have been paid to such Beneficiary shall instead be paid to any surviving Beneficiaries in equal shares. If no Beneficiaries survive me, then benefit shall be paid to the Participant's estate or as directed by the Plan's terms.

This designation of Beneficiary or Beneficiaries IS  or  IS NOT (circle one) irrevocable by me.

_____        _____
Participant's Signature                                   Date

_____
Witness

Final Adoption Agreement-01
March 2003
© 2003 Millennium Marketing Group, LLC
Patent Pending 2003

2

EXHIBIT "C"
BENEFICIARY DESIGNATION
UNDER THE
MILLENNIUM MULTIPLE EMPLOYER WELFARE BENEFIT PLAN[1] (the "Plan")

Participant's Name:  M. FRED WESTFALL

Social Security Number:  255 38 7067

I M. FRED WESTFALL , desire to become a Participant in the Plan. I designate the trust or person(s) identified below as the Beneficiary (ies) of any Death Benefit(s) under the Plan. This Beneficiary Designation hereby revokes and supersedes all other designations that may have been made by me under the Plan prior to this designation. Unless irrevocable as indicated, below, I acknowledge and agree that this Beneficiary Designation is effective and revocable only by me, in writing, or as superceded by a subsequent Beneficiary Designation executed by me.

Check One Option:

☒ I designate a trust to be my Beneficiary

☐ I designate a person or persons to be my Beneficiary (ies)

For Trust:

Name of Trust WESTFALL FAMILY IRREVOCABLE INSURANCE TRUST

Name and Address of Trustee: CHAROLETTE WESTFALL

5530 RUSSET   HOUSTON, TEXAS   77056

State of Origin of Trust: TEXAS      Date Trust Originated: 10/15/91

For Individual Beneficiary (ies):

Name and Address of Beneficiary (ies)      Relationship      Date of Birth

1 _____

2 _____

3 _____

4 _____

---

[1] Copyright 2002, Millennium Marketing Group, LLC, Patent Pending 2002.

Final Adoption Agreement-01
March 2003

and others as shown by the attachment(s), if any.

## NOTICE

Unless otherwise indicated, if there is more than one Beneficiary, Death Benefit(s) will be divided equally among the Beneficiaries. If any Beneficiary predeceases the Participant, the amount that would have been paid to such Beneficiary shall instead be paid to any surviving Beneficiaries in equal shares. If no Beneficiaries survive me, then benefit shall be paid to the Participant's estate or as directed by the Plan's terms.

This designation of Beneficiary or Beneficiaries IS  or  IS NOT (circle one) irrevocable by me.

_____     _____
Participant's Signature                                  Date

_____
Witness

Final Adoption Agreement-01
March 2003
© 2003 Millennium Marketing Group, LLC
Patent Pending 2003

2